**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **TIMOTHY B. HENNIS,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) **CIVIL ACTION** |
| **v.** | ) |
| | ) **No. 15-3008-KHV** |
| **ERICA NELSON, Commandant,** | ) |
| **USDB-Ft. Leavenworth,** | ) |
| | ) |
| **Respondent.** | ) |

## MEMORANDUM AND ORDER

Timothy Hennis filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Mr. Hennis is confined at the United States Disciplinary Barracks in Fort Leavenworth, Kansas ("USDB").  He challenges his 2010 conviction by general court-martial for a triple murder that occurred in 1985.  Petitioner mainly claims that the military court-martial lacked jurisdiction.  He alleges other constitutional violations in the 14 grounds presented in his petition. The Court has screened the petition and finds that Mr. Hennis had not exhausted military court remedies.[1]  The Court dismisses this action without prejudice for failure to exhaust.

### Factual Background And Procedural History

The background facts and lengthy procedural history of petitioner's court-martial conviction are set forth in the written opinions of two civilian courts in an earlier habeas corpus action by Mr. Hennis.  In May 1985, Kathryn Eastburn and two of her three young daughters were brutally murdered in their home.  Hennis v. Hemlick, No. 09-HC-2169-BO (D. N.C. Mar.16, 2010)(unpublished)("Hennis DNC").  At the time of the murders, Hennis was on active

---

[1]      He was preparing to file his initial direct appeal in the military appellate courts at the time he filed this action.

duty stationed at Fort Bragg as a Sergeant (E-5).  Id. at 2.  A few days before the murders, he had

purchased a dog from the Eastburns.  The Eastburn home was less than a mile from the gate to

Fort Bragg.  The husband and father of the victims was a captain in the Air Force who was on

temporary assignment out of state at the time of the murders.  On May 16, 1985, a week after the

murders, Mr. Hennis was arrested by the County Sheriff's Office.  Id.  The Fourth Circuit in

Hennis set forth additional background facts:

> On July 4, 1986, while serving as an enlisted Army soldier stationed at Fort
> Bragg, North Carolina, Hennis was convicted in North Carolina Superior Court
> on one count of rape and three counts of premeditated murder, and, thereafter,
> sentenced to death. On October 6, 1988, the Supreme Court of North Carolina
> reversed his conviction and ordered a new trial. See State v. Hennis, 323 N.C.
> 279, 372 S.E.2d 523 (1988).
>
> On April 19, 1989, at retrial, Hennis was acquitted of all charges.  Thereafter,
> Hennis resumed his enlisted service in the Army. Pertinent to his contentions in
> this matter, it is undisputed that Hennis was issued a discharge from the Army on
> June 12, 1989 and reenlisted in the Army one day later, on June 13, 1989. Hennis
> retired from the Army on July 13, 2004.
>
> In 2006, a cold case review, conducted by the North Carolina State Bureau of
> Investigation, revealed that preserved DNA evidence, obtained from a vaginal
> swab of the victim that Hennis had been accused of raping and murdering in
> connection with his 1986 and 1989 trials, matched the DNA profile of Hennis. In
> response to that revelation, on September 14, 2006, the Army recalled Hennis
> from retired status to active duty to face court-martial charges for triple murder.

Hennis v. Hemlick, 666 F.3d 270, 271 (4th Cir. 2012).

Mr. Hennis sought various forms of collateral relief in the military courts.  The Fourth

Circuit described his pre-trial efforts as follows:

> On December 21, 2007, before commencement of his court-martial, Hennis filed
> a motion before the military trial court seeking a dismissal of all military charges,
> arguing that the Army lacked jurisdiction over him.  On April 28, 2008, the
> military trial court denied Hennis's motion to dismiss.
>
> Thereafter, on May 15, 2008, pursuant to the All Writs Act, 28 U.S.C. § 1651,
> Hennis filed interlocutory petitions for a writ of mandamus, writ of habeas corpus,
> and writ of prohibition with the Army Court of Criminal Appeals. Hennis's

petitions asserted jurisdictional challenges to the Army's court-martial authority and requested enjoinment of the court-martial proceedings. On May 19, 2008, the Army Court of Criminal Appeals issued an order staying the court-martial proceedings, but on June 25, 2008, it denied Hennis's petitions.

On July 15, 2008, Hennis submitted a writ-appeal petition to the military's highest court, the Court of Appeals for the Armed Forces (formerly known as the United States Court of Military Appeals). On September 26, 2008, the Court of Appeals for the Armed Forces denied Hennis's petition without prejudice to seek review of his claims, including his challenges to the Army's jurisdiction, within the military justice system's appellate review process afforded by 10 U.S.C. §§ 866, 867. On October 1, 2008, the Army Court of Criminal Appeals lifted the stay of Hennis's court-martial proceedings.

Hennis, 666 F.3d at 271-72.

Mr. Hennis filed his first civilian-court § 2241 petition in December 2009 in the United States District Court for the Eastern District of North Carolina, Western Division.  He had no conviction or death sentence to attack, but sought a stay of his impending general court martial and "emergency relief."  See Hennis DNC.  The Fourth Circuit summarized the lower court's disposition of Mr. Hennis's § 2241 petition:

The district court, however, did not reach the merits of this matter because it determined that Hennis's petition for a writ of habeas corpus should be dismissed on the basis of the abstention principles set forth in Councilman, 420 U.S. 738, 95 S.Ct. 1300. In Councilman, the Supreme Court held that "when a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system, the federal district courts must refrain from intervention, by way of injunction or otherwise." Id. at 758, 95 S.Ct. 1300.

On March 16, 2010, the district court dismissed Hennis's petition for a writ of habeas corpus without prejudice.

Hennis, 666 F.3d at 273-274.  Petitioner's court-martial commenced on March 2, 2010.

The Circuit Court summarized petitioner's claims as follows:

On December 28, 2009, Hennis initiated this matter by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Eastern District of North Carolina. Hennis argued that his discharge from the Army (i.e., his "break in service" between June 12, 1989 and June 13, 1989)

3

deprived the Army of jurisdiction to court-martial him for conduct that occurred before June 13, 1989. Hennis argued that the Supreme Court's decision in Hirshberg v. Cooke, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621 (1949), was dispositive on the issue of the Army's lack of jurisdiction.  * * *

In essence, the rule recognized in Hirshberg is that once a servicemember is discharged, that servicemember cannot be brought to a court-martial for any crimes that occurred before the discharge ("Hirshberg Rule"). Although the contours of this rule have since changed (footnote omitted), it is undisputed that the Hirshberg Rule applied to Hennis and the Army in June 1989.

On January 28, 2010, the Army moved to dismiss Hennis's petition for a writ of habeas corpus or, in the alternative, for summary judgment. In support of its motion, the Army cited, among other decisions, the decision by the Court of Appeals for the Armed Forces in United States v. Clardy, 13 M.J. 308 (C.M.A.1982), which held that "where a servicemember is discharged prior to the expiration of his [service contract ("ETS Date")] for the specific purpose of immediate reenlistment, ... he can be tried for offenses committed in the earlier enlistment." Id. at 310 (footnote omitted) ("Clardy Exception"). . . .

Under the terms of the Clardy Exception, "a 'short-term discharge'—i.e., a discharge given to a servicemember even before he completes his obligated term of service," Clardy, 13 M.J. at 310 n. 4, does not deprive the military of jurisdiction because the servicemember never enters "civil status" and, consequently, never has a "break in service" for purposes of the Hirshberg Rule.

Critically, a service member's ETS Date must generally remain unlapsed at the time of discharge for the Clardy Exception to apply to the Hirshberg Rule. If the ETS Date has already lapsed at the time of discharge, the Clardy Exception does not apply. . . .

Here, based on the Clardy Exception to the Hirshberg Rule, the Army argued that it never lost jurisdiction because, among other reasons, Hennis executed a reenlistment contract on June 1, 1989 confirming that: (1) Hennis's discharge on June 12, 1989 was for the purpose of reenlistment on June 13, 1989; and (2) Hennis's ETS Date (i.e., date that his previous enlistment was scheduled to end) would not have lapsed until June 17, 1989. By contrast, Hennis argued that, on several alternative grounds, his ETS Date lapsed before his June 12, 1989 discharge. Thus, there was (and remains) an open factual dispute between the parties regarding the date on which Hennis's previous term of enlistment was to end.

Hennis, 633 F.3d at 272-73.  The United States Court of Appeals for the Fourth Circuit affirmed

Hennis DNC in January of 2012.  The United States Supreme Court denied Mr. Hennis's petition

for writ of certiorari on May 14, 2012.

Mr. Hennis has meticulously listed five "petitions" that he filed in the military courts in 2013 and 2014 following his court-martial convictions. Three of these "post-trial" petitions were filed in the Army Court of Criminal Appeals ("ACCA") and two in the Court of Appeals for the Armed Forces ("CAAF"). These military habeas corpus writs sought extraordinary relief "attacking jurisdiction." All were denied without prejudice. Mr. Hennis was directed to "raise at normal appeals (sic)." Petitioner states that the military appellate courts "did not even require government to respond" and never "addressed or discussed" his underlying jurisdictional issues.

### Claims

Mr. Hennis presents 14 claims in his petition. He mainly claims that the court-martial lacked personal jurisdiction over him because he was not lawfully ordered to active duty and the court-martial judgment is void as a result. His remaining claims are briefly summarized as follows: (2) due to a break in service, the Army was "statutorily prohibited" from court martialing him for offenses that occurred prior to June 12, 1989, (3) the court-martial judgment was void due to lack of in personam jurisdiction, (4) the court-martial judge erred as to the question of revived jurisdiction, (5) petitioner is unlawfully imprisoned as he is not in a lawful military status, (6) the Military Rule for Courts-Martial ("RCM") that prohibits polling of panel members violated petitioner's constitutional rights, (7) another RCM violated his constitutional right of compulsory witness production, (8) 10 U.S.C. § 838(b) interfered with petitioner's absolute constitutional right to control his own defense; (9) the military refused to provide defense attorneys who were properly trained and experienced in capital cases, (10) petitioner's court-martial convictions following his two trials in North Carolina for the same offenses violated Fifth Amendment double jeopardy principles and (11) the selection process for military

judges resulted in "implied bias" of the ACCA.  Petitioner mentions three other issues that he might submit based on an alleged break in service when he retired in 2004.  Mr. Hennis asks this Court to void the court-martial findings and sentence, order his immediate release from illegal confinement and expunge all records of his unlawful court-martial and convictions.

## Legal Standards

Habeas corpus relief is available under 28 U.S.C. § 2241(c)(3) to prisoners who are in custody "in violation of the Constitution or laws or treaties of the United States."  Rule 4 of the Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254 ("HC Rules") requires the assigned judge to review a habeas petition upon filing and to sua sponte "dismiss the petition" without ordering a responsive pleading "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  Id.

The North Carolina federal district court that dismissed Mr. Hennis's first civilian § 2241 petition detailed the court-martial procedure and the military remedies available to him as follows:

> The Uniform Code of Military Justice ("UCMJ") sets out the statutory process by which a military trial may exercise court-martial jurisdiction over a service member.  Article 2 of the UCMJ and supplemented by Article 3; 10 U.S.C. §§ 802-803.  Military judges are empowered to hear and rule on trial and pretrial motions, including jurisdictional challenges.  RCM 801(a). . . .  In all capital cases, general courts-martial consist of a military judge and no fewer than twelve members. . . .  RCM 501(a)(1).
>
> After a sentence is adjudged in a court martial, the accused may submit written matters reasonably tending to affect the convening authority's decision to approve or disapprove of the finding of guilt and/or sentence.  RCM 1105(a) and (b).  The right to appeal a court martial finding or sentence is statutorily created by the UCMJ.  The findings and sentence approved by the convening authority may be appealed to the service Court of Criminal Appeals.  10 U.S.C. § 866.  An Army case involving imprisonment of more than one year is automatically appealed to the Army Court of Criminal Appeals ("ACCA") unless waived.  Id.  Appeal may then be made to the Court of Appeals for the Armed Forces ("CAAF") and the United States Supreme Court.  10 U.S.C. § 867; 28 U.S.C. § 1259.  In a case and

conviction in which a sentence "extends to death," CAAF shall review the record. 10 U.S.C. § 867(a).

Service members may petition ACCA and CAAF in exceptional circumstances for extraordinary relief as an interlocutory appeal.  ACCA and CAAF have discretion to issue such extraordinary writs under the All Writs Act.  28 U.S.C. § 1651 (1992).  Because of the "extremely heavy burden" necessary to grant a writ, the denial may be entered without prejudice and reviewed within the normal appellate process.  10 U.S.C. §§ 866, 867; Dew v. United States, 48 M.J. 639, 648 (Army Ct. Crim. App. 1997).

Hennis DNC at 5-6.  Article 76 of the UCMJ (10 U.S.C. § 876) provides in pertinent part that "the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter . . . are final and conclusive" and "all action taken pursuant to those proceedings (is) binding upon all . . . courts . . . of the United States . . . ."  Schlesinger v. Councilman, 420 U.S. 738, 745 (1975).  The Supreme Court in Schlesinger rejected the military's arguments that Article 76 had removed any jurisdiction the federal district court might have had and that Congress intended to limit collateral attack in civilian courts on court-martial convictions to proceedings under § 2241.  Id. at 745.

In  Gusik v. Schilder, 340 U.S. 128 (1950), the United States Supreme Court established the general rule that habeas corpus petitions filed by military prisoners should not be entertained by federal civilian courts until all available remedies within the military court system have been exhausted.  The Court in Gusik drew an "explicit analogy" to the exhaustion requirement for federal habeas corpus attacks on state criminal convictions as follows:

An analogy is a petition for habeas corpus in the federal court challenging the jurisdiction of a state court. If the state procedure provides a remedy, which though available has not been exhausted, the federal courts will not interfere. That is not only the holding of the Court in a long line of cases, (citations omitted); it is the rule which Congress recently wrote into the Judicial Code. 28 U.S.C. [§]2254, 28 U.S.C.A. [§]2254. The policy underlying that rule is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts. If an available procedure has not been employed to rectify the alleged error which the federal court is asked to correct, any

7

interference by the federal court may be wholly needless.

Id. at 131-32.  In Burns v. Wilson, 346 U.S. 137, 142 (1953), the Supreme Court confirmed the

exhaustion doctrine, reasoning as follows:

> Military law, like state law, is a jurisprudence which exists separate and apart
> from the law which governs in our federal judicial establishment.  This Court has
> played no role in its development; we have exerted no supervisory power over the
> courts which enforce it; the rights of men in the armed forces must perforce be
> conditioned to meet certain overriding demands of discipline and duty, and the
> civil courts are not the agencies which must determine the precise balance to be
> struck in this adjustment.  The Framers expressly entrusted that task to Congress.
>
> Indeed, Congress has taken great care both to define the rights of those subject to
> military law, and provide a complete system of review within the military system
> to secure those rights.

Id. at 140 (footnotes omitted).  The Court in Burns emphasized that the "military courts, like the

state courts, have the same responsibilities as do the federal courts to protect a person from a

violation of his constitutional rights."  Id. at 142.

In 1975, the Supreme Court decided Schlesinger v. Councilman, its seminal opinion on

the jurisdiction of federal civilian courts with respect to military court-martial proceedings.

Army Captain Councilman asked a civilian federal court in Oklahoma to enjoin military

authorities from proceeding on court-martial charges of off-post marijuana dealing.  Councilman

claimed that "the court-martial lacked jurisdiction over the alleged offenses."  Councilman, 420

U.S. at 742.  The United States District Court granted a permanent injunction and the Tenth

Circuit Court Of Appeals affirmed on the ground that the offenses charged were not "service-

connected" and hence were not within court-martial jurisdiction.  Id. at 738, 742.  The military

authorities sought a writ of certiorari on the "service-connected" offense issue.  However, the

Supreme Court granted the petition to consider "the jurisdictional and equity issues necessarily

implicit in this case," which they found "sufficiently important to raise . . . sua sponte."  Id. at

743.  It required the parties to brief the following issues: (1) the jurisdiction of the district court,

(2) exhaustion of remedies, and (3) the propriety of a federal district court enjoining a pending

court-martial proceeding.  Id. at 743-44.  The Supreme Court held as follows:

> The judgments of the District Court and the Court of Appeals were predicated on certain assumptions, not hitherto examined by this Court, concerning the proper relationship between the military justice system established by Congress and the powers and responsibilities of Art. III courts. In the view we take of the matter, the case presents no occasion for resolution of the merits of Councilman's 'service-connection' claim. Although the District Court may have had subject-matter jurisdiction, we think that the balance of factors governing exercise of equitable jurisdiction by federal courts normally weighs against intervention, by injunction or otherwise, in pending court-martial proceedings. We see nothing in the circumstances of this case that alters this general equitable balance. Accordingly, we reverse.  (Footnote omitted.).

Id. at 740.  The Supreme Court's reasoning in Councilman is quoted extensively here because it

thoroughly explains the principles governing petitioner's request for civilian court review before

he has exhausted his available military appeals:

> Congress is empowered under Art. I, s 8, to 'make Rules for the Government and Regulation of the land and naval Forces.' It has, however, never deemed it appropriate to confer on this Court 'appellate jurisdiction to supervise the administration of criminal justice in the military.' Noyd v. Bond, 395 U.S. 683, 694, 89 S.Ct. 1876, 1883, 23 L.Ed.2d 631 (1969). See Ex parte Vallandigham, 1 Wall. 243, 249—253, 17 L.Ed. 589 (1864). Nor has Congress conferred on any Art. III court jurisdiction directly to review court-martial determinations. The valid, final judgments of military courts, like those of any court of competent jurisdiction not subject to direct review for errors of fact or law, have res judicata effect and preclude further litigation of the merits. (Citations and footnotes omitted.).  * * *

> . . . This case, of course, does not concern a collateral attack on a court-martial judgment, at least in the normal sense, since there was no judgment to attack.  . . . [T]he legal basis on which Councilman rested his claim for equitable relief did not go beyond recognized grounds for collateral attack. In effect, Councilman is attempting to attack collaterally the military authorities' decision to convene the court-martial and the refusal of the military judge to dismiss the charges. Article 76, however, gives binding effect not only to court-martial judgments, but also to 'all action taken pursuant to those proceedings.' We therefore agree with (the military) that, as a jurisdictional matter, Councilman's suit stands on precisely the same footing as suits seeking possible post judgment forms of collateral relief. . . .

(Footnotes omitted.).

Article 76, however, does not expressly effect any change in the subject-matter jurisdiction of Art. III courts. Its language only defines the point at which military court judgments become final and requires that they be given res judicata effect. But, as the Court has recognized in the past, there is no necessary inconsistency between this and the standard rule that void judgments, although final for purposes of direct review, may be impeached collaterally in suits otherwise within a court's subject-matter jurisdiction.  * * *

Our holding that the District Court had subject-matter jurisdiction . . . does not carry with it the further conclusion that the District Court properly could reach the merits of Councilman's claim or enjoin the (military) from proceeding with the impending court-martial. There remains the question of equitable jurisdiction, a question concerned, not with whether the claim falls within the limited jurisdiction conferred on the federal courts, but with whether consistently with the principles governing equitable relief the court may exercise its remedial powers. (Citations omitted).

In support of his prayer for an injunction, Councilman claimed that he would incur 'great and irreparable damage in that he (might) be deprived of his liberty without due process of law. . . .' The presiding military judge had refused to dismiss the charges against Councilman, rejecting the argument that they were not service connected and that therefore the court-martial lacked jurisdiction to act on them. Thus, when the District Court intervened, there was no question that Councilman would be tried. But whether he would be convicted was a matter entirely of conjecture. And even if one supposed that Councilman's service-connection contention almost certainly would be rejected on any eventual military review, there was no reason to believe that his possible conviction inevitably would be affirmed.

It therefore appears that Councilman was 'threatened with (no) injury other than that incidental to every criminal proceeding brought lawfully and in good faith.' Douglas v. City of Jeannette, 319 U.S. 157, 164, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943). Of course, there is inevitable injury—often of serious proportions—incident to any criminal prosecution. But when the federal equity power is sought to be invoked against state criminal prosecutions, this Court has held that '(c)ertain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, (can) not by themselves be considered 'irreparable' in the special legal sense of that term.' Younger v. Harris, 401 U.S., at 46, 91 S.Ct., at 751. 'The maxim that equity will not enjoin a criminal prosecution summarizes centuries of weighty experience in Anglo-American law.' Stefanelli v. Minard, 342 U.S. 117, 120, 72 S.Ct. 118, 120, 96 L.Ed. 138 (1951). This maxim of equitable jurisdiction originated as a corollary to the general subordination of equitable to legal remedies, which in turn 'may originally have grown out of circumstances peculiar to the English judicial system

. . ..' <u>Younger v. Harris</u>, supra, 401 U.S. at 44, 91 S.Ct., at 750. . . . As to state criminal prosecutions, such justification has been found to reside in the peculiarly compelling demands of federalism and the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law . . ..' <u>Stefanelli v. Minard</u>, supra, 342 U.S., at 120, 72 S.Ct., at 120. The precise content of constitutional rights almost invariably turns on the context of fact and law in which they arise. State courts are quite as capable as federal courts of determining the facts, and they alone can define and interpret state law. Equally important, under Art. VI of the Constitution, state courts share with federal courts an equivalent responsibility for the enforcement of federal rights, a responsibility one must expect they will fulfill. These considerations of comity, the necessity of respect for coordinate judicial systems, have led this Court to preclude equitable intervention into pending state criminal proceedings unless the harm sought to be averted is 'both great and immediate,' of a kind that 'cannot be eliminated by . . . defense against a single criminal prosecution.' <u>Fenner v. Boykin</u>, 271 U.S. 240, 243, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926); <u>Younger v. Harris</u>, supra, 401 U.S., at 46, 91 S.Ct., at 751. <u>See</u> <u>Dombrowski v. Pfister</u>, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Precisely these considerations underlie the requirement that petitioners seeking habeas relief from state criminal convictions must first exhaust available state remedies: the federal courts are 'not at liberty . . . to presume that the decision of the state court would be otherwise than is required by the fundamental law of the land . . ..' <u>Ex parte Royall</u>, 117 U.S. 241, 252, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886). <u>See</u> <u>Darr v. Burford</u>, 339 U.S. 200, 204 n. 10, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950).

To some extent, the practical considerations supporting both the exhaustion requirement in habeas corpus and the federal equity rule barring intervention into pending state criminal proceedings except in extraordinary circumstances are similar to those that underlie the requirement of exhaustion of administrative remedies. The latter rule, looking to the special competence of agencies in which Congress has reposed the duty to perform particular tasks, is based on the need to allow agencies to develop the facts, to apply the law in which they are peculiarly expert, and to correct their own errors. The rule ensures that whatever judicial review is available will be informed and narrowed by the agencies' own decisions. It also avoids duplicative proceedings, and often the agency's ultimate decision will obviate the need for judicial intervention. (Citations omitted.).

These considerations apply in equal measure to the balance governing the propriety of equitable intervention in pending court-martial proceedings. But as in the case of state criminal prosecutions there is here something more that, in our view, counsels strongly against the exercise of equity power even where, under the administrative remedies exhaustion rule, intervention might be appropriate. While the peculiar demands of federalism are not implicated, the deficiency is supplied by factors equally compelling. The military is 'a specialized society separate from civilian society' with 'laws and traditions of its own (developed) during its long history.' <u>Parker v. Levy</u>, 417 U.S., at 743, 94 S.Ct., at 2555.

Moreover, 'it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise,' Toth v. Quarles, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). To prepare for and perform its vital role, the military must insist upon a respect for duty and a discipline without counterpart in civilian life. The laws and traditions governing that discipline have a long history; but they are founded on unique military exigencies as powerful now as in the past. Their contemporary vitality repeatedly has been recognized by Congress.   (Footnote omitted.).

In enacting the (UCMJ), Congress attempted to balance these military necessities against the equally significant interest of ensuring fairness to servicemen charged with military offenses, and to formulate a mechanism by which these often competing interests can be adjusted. As a result, Congress created an integrated system of military courts and review procedures, a critical element of which is the Court of Military Appeals consisting of civilian judges 'completely removed from all military influence or persuasion,' who would gain over time thorough familiarity with military problems. See Noyd v. Bond, supra, 395 U.S., at 694—695, 89 S.Ct., at 1882—1883.  (Citation omitted.).

As we have stated above, judgments of the military court system remain subject in proper cases to collateral impeachment. But implicit in the congressional scheme embodied in the Code is the view that the military court system generally is adequate to and responsibly will perform its assigned task. We think this congressional judgment must be respected and that it must be assumed that the military court system will vindicate servicemen's constitutional rights. We have recognized this, as well as the practical considerations common to all exhaustion requirements, in holding that federal courts normally will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted. Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950); Noyd v. Bond, supra. The same principles are relevant to striking the balance governing the exercise of equity power. We hold that when a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system, the federal district courts must refrain from intervention, by way of injunction or otherwise.  (Footnote omitted.).

Respondent seeks to avoid this result by pointing to the several military habeas cases in which this Court has not required exhaustion of remedies in the military system before allowing collateral relief. Toth v. Quarles, supra; Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); McElroy v. United States ex rel. Guagliardo, 361 U.S. 281, 80 S.Ct. 305, 4 L.Ed.2d 282 (1960). In those cases, the habeas petitioners were civilians who contended that Congress had no constitutional power to subject them to the jurisdiction of courts-martial. The issue presented concerned not only the military court's jurisdiction, but also whether under Art. I Congress could allow the military to interfere with the liberty of civilians . . . The constitutional question presented turned on the status of the persons as to whom the military asserted its power. As the Court noted in Noyd, it

'did not believe that the expertise of military courts extended to the consideration of constitutional claims of the type presented.' Ibid. (Footnote omitted.).

Assuming, arguendo, that . . . federal court intervention would be appropriate in cases like Toth and its progeny despite failure to exhaust military remedies, the considerations supporting such intervention are not applicable here. Councilman was on active duty when the charges against him were brought. There is no question that he is subject to military authority and in proper cases to disciplinary sanctions levied through the military justice system. We see no injustice in requiring (Councilman) to submit to a system established by Congress and carefully designed to protect not only military interests but his legitimate interests as well. Of course, if the offenses with which he is charged are not 'service connected,' the military courts will have had no power to impose any punishment whatever. But that issue turns in major part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and on whether the distinct military interest can be vindicated adequately in civilian courts. These are matters of judgment that often will turn on the precise set of facts in which the offense has occurred. More importantly, they are matters as to which the expertise of military courts is singularly relevant, and their judgments indispensable to inform any eventual review in Art. III courts. (Footnote and citations omitted.).  * * *

We have no occasion to attempt to define those circumstances, if any, in which equitable intervention into pending court-martial proceedings might be justified. In the circumstances disclosed here, we discern nothing that outweighs the strong considerations favoring exhaustion of remedies or that warrants intruding on the integrity of military court processes.

Id. at 746-761.  The Supreme Court reaffirmed the military exhaustion doctrine over 20 years

later in Clinton v. Goldsmith, 526 U.S. 529, 537 n.11 (1999), and discussed the limited review

available in civilian courts under § 2241 as follows:

[O]nce a criminal conviction has been finally reviewed within the military system, and a servicemember in custody has exhausted other avenues provided under the UCMJ to seek relief from his conviction, see Noyd v. Bond, 395 U.S. 683, 693–699, 89 S.Ct. 1876, 23 L.Ed.2d 631 (1969), he is entitled to bring a habeas corpus petition, see 28 U.S.C. § 2241(c), claiming that his conviction is affected by a fundamental defect that requires that it be set aside.

Id.  (Citations omitted.).

Much of civilian federal court law on military cases developed in the Tenth Circuit

because the USDB is within its jurisdiction.  The Tenth Circuit has repeatedly held that a petitioner must exhaust military remedies before filing a habeas petition in federal civilian court. See e.g., Lundy v. Zelez, 908 F.2d 593, 594 (10th Cir. 1990)(citing Gusik, 340 U.S. at 131-32; Noyd, 395 U.S. at 693.); Noyd v. McNamara, 378 F.2d 538, 539 (10th Cir. 1967); Evans v. Lansing, 216 F.3d 1087 (10th Cir. 2000)(Table).  The pro se petitioner in Evans appealed from the district court's dismissal of his habeas corpus petition for failure to exhaust military remedies.  The Tenth Circuit affirmed, reasoning as follows:

> Evans filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in United States District Court for the District of Kansas, alleging numerous constitutional violations arising out of his conviction by military court martial in March 1998.  The district court dismissed his petition without prejudice pending resolution of his direct appeal before the Navy Marine Corps Court of Criminal Appeals.
>
> The Supreme Court has stated unequivocally that
>
>> implicit in the congressional scheme embodied in the (UCMJ) is the view that the military court system generally is adequate to and responsibly will perform its assigned task .... [T]his congressional judgment must be respected and ... it must be assumed that the military court system will vindicate servicemen's constitutional rights. We have recognized this, as well as the practical considerations common to all exhaustion requirements, in holding that federal courts normally will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted.
>
> Schlesinger v. Councilman, 420 U.S. 738, 758 (1975) (citing Gusik v. Schilder, 340 U.S. 128, 131-32 (1950); Noyd v. Bond, 395 U.S. 683, 693-94 (1969)) (emphasis added); see also Khan v. Hart, 943 F.2d 1261, 1263 (10th Cir. 1991). . . . Based on the record before us, Evans's conclusory allegation that exhaustion would be futile does not persuade us to depart from the general rule requiring exhaustion established in Schlesinger. Nor is this a case in which a conscientious objector or a civilian, for example, was improperly subjected to military court martial, meriting a departure from the exhaustion requirement.  (Citations omitted.). Absent "harm other than that attendant to the resolution of his case" within the military system, the district court correctly dismissed Evans's petition without prejudice, and no legal impediment stands in the way of his bringing a § 2241 petition after "all available military remedies have been exhausted."

14

Schlesinger, 420 U.S. at 758 (internal quotations and citations omitted).

Id. at *1.  The Tenth Circuit more recently reiterated that a petitioner whose claims were not raised in the military courts has not exhausted military court remedies and his petition must be dismissed without prejudice.  Banks v. U.S., 431 F. App'x 755, 757 (10th Cir. 2011)(citing Schlesinger, 420 U.S. at 758).  Not surprisingly, this and other federal district courts have also repeatedly held that "federal courts normally will not entertain habeas petitions by military prisoners unless all available military remedies have been exhausted."  See e.g., Khadr v. Obama, 724 F.Supp.2d 61, 64 (D.D.C. 2010), (quoting Councilman, 420 U.S. at 758); Al Odah v. Bush, 593 F.Supp.2d 53, 57 (D.D.C. 2009); Piotrowski v. Commandant, USDB, 2009 WL 5171780, *3 (D.Kan. Dec. 22, 2009); Lessenthien v. McGuire, 2005 WL 1842750, *1 (D.Kan. July 29, 2005); Haughton v. United States, 2009 WL 1562750, *2 (D.Minn. Jun 2, 2009); Pope v. Sivious, 2006 WL 2990375, *2 (W.D. Okla. Oct. 18, 2006).

## Analysis

No responsive pleading is required in this action under HC Rule 4 because the petition on its face shows that Mr. Hennis is not entitled to relief in this Court at this time.  Mr. Hennis repeatedly states in his petition that he is in the process of directly appealing his military conviction and sentence to the ACCA, that his "pending direct appeal" has not yet been filed, that "[a]ll issues are still being drafted and decided upon" by the Defense Appellate Division, and that all the claims he presents in the instant petition "will be presented on direct appeal." These allegations plainly show that petitioner has not exhausted the remedies available in the military courts.

The only issue before this court is whether equity precludes dismissal of this action for failure to exhaust.  The federal district court in North Carolina already decided that Mr. Hennis's

claims do not warrant equitable intervention.   That court relied upon the principles in

Councilman to dismiss petitioner's first § 2241 petition to allow exhaustion of military remedies:

> While the court has plenary authority to review the matter, Councilman is further instructive on whether such review is nonetheless appropriate.   Specifically, Councilman holds, as a general rule, where members of the armed forces file habeas petitions seeking relief from the military restraint of liberty, federal civil courts should not entertain petitions until all available remedies within the military court system have been exhausted. . . .   The Court (in Councilman) stated "the practical considerations supporting both the exhaustion requirement in habeas corpus and the federal equity rule barring intervention into pending state criminal proceedings except in extraordinary circumstances are similar to those that underlie the requirement of exhaustion of administrative remedies. " Id. at 756.   . . . [T]he Court instructed "when a service man charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system, the federal district courts must refrain from intervention, by way of injunction or otherwise." Id. at 758.

Hennis DNC at 6-7.  The North Carolina court discussed the limited exceptions to the exhaustion

doctrine in particular and determined that Mr. Hennis did not fit within any of those exceptions:

> . . . .While there are exceptions to exhaustion, the courts have intervened because of the unique position of the individual subject to court martial.  See e.g. Hamdan v. Rumsfeld, 548 U.S. 557 n. 16 (2006)(holding that Councilman distinguished service personnel from civilians and "abstention is not appropriate in cases in which individuals raise "substantial arguments denying the right of the military to try them at all,' and in which the legal challenge 'turn[s] on the status of the persons as to whom the military asserts its power"); Toth v. Quarles, 350 U.S. 11, 13 and 23 (1955)("At the time of the arrest [Toth] had no relationship of any kind with the military."  The Court held "[t]hat Congress cannot subject civilians like Toth to trial by court martial.  They, like other civilians, are entitled to have the benefit of safeguards afforded those tried in the regular courts authorized by Article III of the Constitution.").  Hennis attempts to establish that these cases are decisive because there was a "break in service," a period of time after the crime in which he was a civilian, before re-enlistment. . . .

> In the case before this court, the question is one of material fact mired in time lines, expiration of term of service dates ("ETS"), discharge dates, re-enlistment dates, the military code, and military regulations.  We have an enlisted soldier who was on active duty when the crime occurred.  Hennis was convicted in the North Carolina State court of the crimes; he served time for the crimes on death row; after state appellate review, he was re-tried and acquitted.  It appears from the records that upon leaving incarceration, petitioner returned to the Army and reported to Fort Know, Kentucky.  At that point while Hennis remained at the

Army base, the Army resolved his status as they saw appropriate, and thereafter, Hennis had a long military career. The specifics of the argued break in service and whether this alleged break protects him from the reach of a military court martial is at issue. It is disputed ardently by both sides.

As such, the cases Hennis relies on are distinguishable from his contested status at a past point in time. There was no question as to the individual's status in Hamdan – he was an alien detained at Guantanamo Bay – or in Toth – he had no relationship with the military at the time of his arrest. This is not the situation here, and Hennis's status does not present the unique circumstances of Hamdan or Toth that mandate intervention of an ongoing court martial.

The issues Hennis has raised before this court may be plausible defenses at the court martial, as well as, appealable issues if the outcome ends in a conviction. Attempting to resolve any of these questions would be inappropriate at this time with a court martial in progress. Therefore, as the circumstances are set out, this court, like that in Councilman, "discerns nothing that outweighs the strong considerations favoring exhaustion of remedies or that warrants intruding on the integrity of the military court processes." Id. at 761.

Id. at 8-9. The Fourth Circuit affirmed, based upon the reasoning in Councilman as follows:

The first consideration identified in Councilman arises from the unique role of the military in preparing for and fighting in wars, which requires "the military [to] insist upon a respect for duty and a discipline without counterpart in civilian life." Id. Hence, "the efficient operation[s] of the Armed Forces are best served if the military justice system acts without regular interference from civilian courts." Hamdan, 548 U.S. at 586, 126 S.Ct. 2749 (citation omitted). A central feature of this "military discipline" consideration is that "[t]he military is a specialized society separate from civilian society with laws and traditions of its own developed during its long history." Councilman, 420 U.S. at 757, 95 S.Ct. 1300 (internal quotation marks, alterations, and citation omitted). In light of the military's history and specialized society, comity further "ensures that whatever [federal court] review is available [after all available military remedies are exhausted] will be informed and narrowed by the [military's] own decisions[,]" which "avoids duplicative proceedings" and may "obviate the need for [federal court] intervention." Id. at 756–757, 95 S.Ct. 1300.

The second consideration identified in Councilman arises from the respect that federal courts should have for "the balance that Congress struck between military preparedness and fairness to individual service members when it created an integrated system of military courts and review procedures, a critical element of which is the [Court of Appeals for the Armed Forces] consisting of civilian judges completely removed from all military influence or persuasion." Hamdan, 548 U.S.

at 586, 126 S.Ct. 2749 (internal quotation marks, alterations, and citations omitted); see also Councilman, 420 U.S. at 757, 95 S.Ct. 1300. Indeed, "abstention in the face of ongoing court-martial proceedings is justified by our expectation that the military court system established by Congress—with its substantial procedural protections and provision for appellate review by independent civilian judges—will vindicate servicemen's constitutional rights[.]" Hamdan, 548 U.S. at 586, 126 S.Ct. 2749 (internal quotation marks and citation omitted).

Thus, "federal courts are not at liberty to presume that the decision of the [military courts] would be otherwise than is required by the fundamental law of the land." Councilman, 420 U.S. at 756, 95 S.Ct. 1300 (internal quotation marks, alterations, and citations omitted). Consequently, comity generally requires that a service member first exhaust all available military remedies before seeking federal court intervention into pending court-martial proceedings. See, e.g., New, 129 F.3d at 643 ("In connection with court-martial proceedings, the exhaustion requirement [articulated in Councilman] is particularly important[.]").

Hennis, 666 F.3d at 276-77. The decisions of the North Carolina district court and the Fourth Circuit have res judicata effect. Petitioner does not discuss these opinions. He thus makes no attempt to distinguish the findings and rulings against him. Clearly, the issues in Hennis v. Hemlick are indistinguishable. Mr. Hennis does not suggest why this Court would have authority to rule differently on the specific procedural issues already decided against him. Even if this Court had such authority, it would deny this petition on the same grounds for failure to exhaust.

In his 280 pages of pleading, exhibits and other filings, Mr. Hennis does not seriously address the crucial threshold issue of exhaustion. Instead, he vigorously argues the merits of his numerous habeas corpus claims. Without more, his arguments on the merits do not excuse his failure to exhaust. Petitioner discusses the "Exhaustion of Remedies Doctrine" in a mere two pages of his 80-page Brief. He acknowledges the exhaustion doctrine, but makes only cursory arguments that he is entitled to an exception or that the exhaustion doctrine should not apply. The Court in turn briefly remarks upon petitioner's exhaustion arguments.

The Court rejects petitioner's assertion that the exhaustion doctrine does not apply because his issues "all deal with the application of law and not with any factual questions." Petitioner cites no authority and presents no convincing legal theory to substantiate this argument.[2]  Exhaustion is required on legal as well as factual issues.  Furthermore, petitioner's "issues" involve numerous factual questions as to crucial dates and circumstances underlying his alleged breaks in service, discharges, illegal and false military orders, involuntary recall orders, and changes in his expiration of term of service ("ETS") dates, service contracts, and status.

The Court rejects petitioner's assertion that he "already exhausted" military remedies because he filed extraordinary petitions in the military appellate courts.  Petitioner asked those courts to "assert their emergency interlocutory relief powers" to rule upon jurisdictional issues. He claims that he "may not properly be required to exhaust" after their refusal.  Mr. Hennis presents no compelling legal theory or authority for his bald assertion that his use of extraordinary collateral remedies alone satisfied the exhaustion prerequisite.  Nor could he, since this assertion has no legal merit.  As previously discussed, the direct appeal remedies created by Congress for servicemembers convicted of military crimes are set forth in the UCMJ.  It would make little sense to hold that direct appeal procedures devised by Congress were not the primary ones to be exhausted.  Furthermore, military and civilian courts have clear authority to decide whether a claim warrants interlocutory determination.  In short, Mr. Hennis's filing of several petitions seeking interlocutory review did not amount to exhaustion of all available military remedies.  Moreover, he is not free to ignore the directives of the military appellate courts to raise his claims through the normal appeal process.

---

[2]     Since the Court does not reach the merits of petitioner's claims, the analysis in Dodson v. Zelez, 917 F.2d 1250, 1252-53 (10th Cir. 1990) is inapplicable at this time.

The Court rejects petitioner's assertion that he should not have to exhaust because federal courts, including the U.S. Supreme Court, have in the past ruled upon habeas corpus petitions challenging the military's jurisdiction without requiring exhaustion.  Courts that have ruled on jurisdictional issues despite the petitioner's failure to exhaust have applied an exception to the general rule.  Mr. Hennis does not refer to any particular precedent establishing an exception or show that his case falls within that exception.  He cites Noyd v. Bond, 395 U.S. 683, 695-97 (1969), which refutes rather than supports his position.[3]  As presented in his application, the facts of petitioner's case do not establish that he fits within any of the recognized exceptions discussed above.  Mr. Hennis was an active servicemember rather than a civilian at the time the murders were committed.  He was not arrested as a conscientious objector.  Nor is he an alien detainee at Guantanamo.

The Court likewise rejects petitioner's assertion that no "military expertise" is required on his "jurisdictional or constitutional issues."  In support of this assertion, he contends that his jurisdictional challenges "in no way" require any specific military experience to understand the issues involved or "deference to the military courts."  This Court could not disagree more.  Petitioner's own statement of his claims and brief completely undermine this contention, as they are filled with citations to provisions of the UCMJ, court-martial rules, Army regulations, and military case law.  Moreover, this assertion was specifically decided against him in Hennis DNC.

The court rejects petitioner's argument that exhaustion should be excused for reasons of "economy of justice."  In support, he worries that should this Court fail to address his claims he

---

[3]        Failure to exhaust is "not excused" for petitioner who "would have civilian courts intervene precipitately into military life without the guidance of the (military appellate) court to which Congress has confided primary responsibility for the supervision of military justice in this country and abroad."  Id. at 695.

will be subjected to attempts by the Army to court-martial him "over and over on these same alleged offenses."  This argument is speculative and ignores the limitations on habeas review discussed later.

Mr. Hennis mainly argues that he should not be required to exhaust military remedies because he is challenging the military's jurisdiction to try him at all.  To support this argument, he again generally refers to his claims as involving "both jurisdictional and constitutional questions."  He argues in particular, based on his claim that the military lacked personal jurisdiction at the time of his court-martial, that he is entitled to bypass military court appeals and have his claims heard in civilian court.  As noted previously, the federal district court in North Carolina and the Fourth Circuit soundly rejected this and petitioner's other assertions.  The military prisoner in Schlesinger v. Councilman was denied civilian court intervention when he similarly claimed that the court-martial lacked jurisdiction because the charged offenses did not meet the tests for "service-connection."  Councilman, 420 U.S. at 743-44.  Petitioner's claims that the military court-martial lacked jurisdiction are based upon interpretations of military statutes, orders, rules, and regulations.  These types of claims are commonly presented to and determined by the military courts.  Petitioner's claims are not shown to merit a departure from the exhaustion requirement.  See Evans, 216 F.3d 1087 at *1.  They are also precisely the types of issues that call out for adjudication by the military's specialized courts.  Mr. Hennis presents no reason why the military courts cannot adequately resolve all of his habeas corpus claims.  Nor has he shown that exhaustion of military court remedies will be futile.  In sum, petitioner has failed to show a "peculiar urgency" for his claims to be immediately heard in civilian court.

Mr. Hennis's eagerness to bypass direct appeals in the military courts and have his claims immediately determined on collateral review in civilian federal court instead reveals his failure

to comprehend the scope of civilian habeas corpus review.  The available habeas corpus review of military convictions by civilian federal courts is severely limited.  See e.g., Roberts v. Callahan, 321 F.3d 994, 995 (10th Cir.) cert. denied, 540 U.S. 973 (2003)(citing Burns v. Wilson, 346 U.S. 137, 139, 142)(1953)("The federal civil courts have limited authority to review court-martial proceedings."); Dotson v. Zelez, 917 F.2d 1250 (10th Cir. 1990); Faison v. Belcher, 496 Fed. A'ppx 890, 891 (10th Cir. 2012).  As noted, Congress has not conferred appellate jurisdiction upon federal district courts to supervise the administration of criminal justice in the military.  In Burns the Supreme Court held that federal civil courts, while they have jurisdiction over a habeas petition from a military prisoner, must defer to the decision of the military court if that court has given fair consideration to the claims advanced in the habeas petition.  Burns, 346 U.S. at 142-44.  In Roberts, the Tenth Circuit discussed the civil courts' limited review of claims by military prisoners as follows:

> The federal civil courts have limited authority to review court-martial proceedings.  Burns[].  If the grounds for relief that Petitioner raised in the district court were fully and fairly reviewed in the military courts, then the district court was proper in not considering those issues.  See id.; see also Lips v. Commandant, United States Disciplinary Barracks, 997 F.2d 808, 811 (10th Cir. 1993). Likewise, if a ground for relief was not raised in the military courts, then the district court must deem that ground waived.  See Watson v. McCotter, 782 F.2d 143, 145 (10th Cir.1986).

Roberts, 321 F.3d at 995; see Lips, 997 F.2d at 812.  Under Burns, Roberts, and Lips, this Court may not review a military prisoner's claims if petitioner failed to present those claims to the military courts.  Thus, Mr. Hennis would be foolish not to raise and fully litigate all of his claims in the military courts by way of the normal appeal procedures.  If Mr. Hennis fails to exhaust any of his claims by way of the available military appeals process, those claims must be considered waived and summarily dismissed unless he can show cause for the procedural default and actual prejudice.  See Roberts, 321 F.3d at 994; Lips, 997 F.2d at 812 (citing Murray v. Carrier, 477

U.S. 478, 491 (1986); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977)); <u>Faison</u>, 496 F. App'x at 891(citing <u>Watson</u>, 782 F.2d at 145)("We will entertain military prisoners' claims if they were raised in the military courts and those courts refused to consider them. We will not review petitioners' claims on the merits if they were not raised at all in the military courts.").

The Court concludes that Mr. Hennis has not exhausted his military court remedies and that no equitable justification to excuse exhaustion is shown.  Accordingly, this action is dismissed without prejudice for failure to exhaust.  Petitioner will remain free to file a timely §2241 petition after he has fully and properly exhausted all remedies available to him in the military courts.[4]

### **Pending Motions**

The Court grants petitioner's <u>Motion to Exceed Page Limitation</u> (Doc. #2).  Petitioner's "Brief in Support of Petition" is attached to this motion along with 17 exhibits.  The Court has reviewed these materials in reaching its decision.  The Court also grants petitioner's <u>Motion to Correct Errata</u> (Doc. #6).  Petitioner requests that pages attached to this motion be substituted for pages in his Brief in Support in order to correct errors.

The Court denies petitioner's <u>Motion for the Presence of the Petitioner at All Proceedings</u>" (Doc. #3) as moot.

### **Miscellaneous Matters**

Mr. Hennis has not filed a motion to stay these § 2241 proceedings.  The stay and abeyance option was recognized in <u>Rhines v. Weber</u>, 544 U.S. 269 (2005).  In <u>Rhines</u> however,

---

[4]      In an abundance of caution, the court calls petitioner's attention to 28 U.S.C. § 2244(d), which imposes a strict one-year time limit on state prisoners for filing habeas corpus petitions in federal district court after a state conviction has become "final" as that term is used in § 2244(d)(1).

the United States Supreme Court held that the federal district court has discretion to stay a habeas corpus petition containing unexhausted claims and "hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims."  Once the petitioner has totally exhausted state court remedies, the stay is lifted and he may proceed in federal court.  In Rhines however, the Supreme Court warned that a stay and abeyance of habeas proceedings should be "available only in limited circumstances."  Thus, it recommended a stay where "petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."  Id. at 277-78.  A petitioner seeking a stay must state facts, and not just conclusions, showing that the Rhines factors exist in his case.  Mr. Hennis does not show good cause for his failure to exhaust his military court remedies prior to filing this action.  The Court therefore has no grounds to sua sponte grant a stay.  Mr. Hennis would do well to diligently pursue his military appeals and any other available military court remedies and to expeditiously file any future § 2241 federal habeas corpus petition in civilian court.

Mr. Hennis filed the instant petition pro se and has not sought appointment of counsel.  In fact, he expresses his intent to litigate this federal habeas petition pro se and even his desire to manage his defense during his military criminal appeals.  Under 18 U.S.C. § 3006A, the Court may appoint counsel for a person seeking relief under § 2241 where it determines that the interests of justice so require.  18 U.S.C. § 3006(a)(2)(B).  Furthermore, 18 U.S.C. § 3599 entitles indigent defendants to the appointment of counsel in capital cases, including habeas corpus proceedings.  Christeson v. Roper, ___U.S.___, 135 S.Ct. 891, 894 (2015)(quoting Martel v. Clair, ___U.S.___, 132 S.Ct. 1276, 1280 (2012)).  Section 3599 provides in pertinent part as follows:

(a)(2) In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).

(b) If the appointment is made before judgment, at least one attorney so appointed must have been admitted to practice in the court in which the prosecution is to be tried for not less than five years, and must have had not less than three years experience in the actual trial of felony prosecutions in that court.

(c) If the appointment is made after judgment, at least one attorney so appointed must have been admitted to practice in the court of appeals for not less than five years, and must have had not less than three years experience in the handling of appeals in that court in felony cases.

(d) With respect to subsections (b) and (c), the court, for good cause, may appoint another attorney whose background, knowledge, or experience would otherwise enable him or her to properly represent the defendant, with due consideration to the seriousness of the possible penalty and to the unique and complex nature of the litigation.

(e) Unless replaced by similarly qualified counsel upon the attorney's own motion or upon motion of the defendant, each attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pretrial proceedings, trial, sentencing, motions for new trial, appeals, applications for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant.

Id. Additionally, HC Rule 8(c) requires that the Court appoint an attorney to represent petitioner "if an evidentiary hearing is warranted."  Thus, Mr. Hennis is not likely to be allowed to proceed in a federal habeas corpus action in this court without appointment of counsel in some capacity.

Mr. Hennis is currently represented by multiple counsel on his military direct appeals. He unwisely seeks to simultaneously litigate the exact same claims in federal civilian court while representing himself.  The Court strongly urges Mr. Hennis to consult with his military defense team as to all matters having to do with his military convictions and sentence and to discuss with

25

them all possible defenses and concerns.  Any claim of ineffective assistance of counsel must be exhausted in the military courts.  Mr. Hennis should carefully consider the pitfalls he has already encountered in this pro se attempt to prematurely assert his claims in civilian federal court.  Even if he continues to believe that he is more capable to argue the facts of his case than any of his attorneys, he is strongly urged to take full advantage of the expertise and resources of his defense team.

**IT IS THEREFORE ORDERED** that this petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 is dismissed without prejudice for failure to exhaust military court remedies.

**IT IS FURTHER ORDERED** that petitioner's Motion to Exceed Page Limitation (Doc.#2) filed January 14, 2015 and petitioner's Motion to Amend/Correct Motion to Exceed Page Limitation (Doc. #6) filed May 6, 2015 be and hereby are **SUSTAINED**.

**IT IS FURTHER ORDERED** that petitioner's Motion For Presence of Petitioner at All Proceedings (Doc.#3) filed March 9, 2015 be and hereby is **OVERRULED** as moot.

Dated this 23rd day of September, 2015 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
